## MUNN v. SOUTHWESTERN STATES TELEPHONE CO.

### Civil Action No. 256.

District Court, N. D. Texas, Fort Worth Division.

March 21, 1942.

Hampden Spiller, of Fort Worth, Tex., for plaintiff.

Chas. C. Huff and G. H. Penland, both of Dallas, Tex., for defendant.

JAMES C. WILSON, District Judge.

This case arises under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., prior to the amendment of August 9, 1939, 29 U.S.C.A. § 213. The plaintiff is a rather elderly spinster, and was employed by the defendant to run a telephone exchange at Boyd, in Wise County, Texas. Boyd is a country village of 300 population, and has a total of 45 telephones, with approximately that many interstate calls handled during a year. The contract provided for the exchange to be operated 24 hours each day, Sundays and holidays included. However, it expressly provided plaintiff was to have such assistants or substitutes as she might need, to be procured by her and paid for by her. Though this was true and the exchange was actually open 24 hours per day, the testimony discloses without any serious controversy that the actual work necessary to so keep it open did not exceed 1 hour out of the 24. The compensation was $30 a month, the defendant providing a residence in which the exchange was located, and in which plaintiff made her home, carrying on the ordinary domestic duties of any housekeeper, keeping her yard and flowers, cooking, eating and sleeping on the premises. As company and help, she had an older lady, Mrs. Tatum, who lived with her and who shared the comforts, the work, the burdens and pleasures of the home. While the exchange, and the little business incident to it, were largely carried on by plaintiff with such other outside help as she would from time to time procure, sometimes her father and mother who lived in Boyd, or neighbors would assist. The testimony does not disclose with any accuracy how much time was actually devoted by such outside help, or the expense incurred, if any.

The period for which overtime is claimed is from October 24, 1938, to August 9, 1939. The latter date was the time Congress amended the Act, Sec. 13(a), to include, among the exemptions under the Act, all switchboard operators, such as plaintiff, where the telephone exchange is less than 500 stations. In other words, since that date the Act does not embrace operators of telephone exchanges such as the one in question. Plaintiff alleges she worked 168 hours per week during the entire period; in other words, put in 124 hours of overtime for each week. She sues for the shortage of minimum wages for the

maximum hours and one and a half for the overtime. During the period, the total revenue of the exchange was $1,529.03. Out of this plaintiff was paid a salary of $720, and the home at an agreed rental value of $6.-50 per month. She here sues for $2,073.78 as under pay, and for $2,073.78 for liquidated damages, and $1,000 attorney's fees, making a total prayed for of $5,047.56.

It will be seen on the very face of it that this claim is made without regard to contract or justice, but, furthermore, that it is an unconscionable demand.

Many interesting questions are raised, among them the initial one, whether the repeal by amendment of August 9, 1939, deprived this Court of jurisdiction of the subject matter and completely extinguished any legal claim plaintiff may have had under the Act as originally passed. However, I think it is only necessary to consider the defense offered by the defendant that the plaintiff did not work the maximum hours, to say nothing of overtime, during any day of the entire period in question, and that no such construction can be placed upon the contract or the character of time spent by plaintiff in carrying on jointly the business and her domestic duties. The burden is on plaintiff to show she worked the hours alleged. The record is without dispute that plaintiff did not actually work any overtime, and for that matter, is without dispute that she did not work even the maximum hours as prescribed by the Act. It is merely plaintiff's contention that such should be the construction by this Court, based upon the fact that she, or some one whom she procured, were subject to answer calls during all hours of the day and night. There was a mechanical call bell arrangement by which plaintiff would be attracted from anywhere on the premises, or awakened from sleep, day or night. The evidence shows that during plaintiff's regular hours of rest at night, between 9:30 and 5 o'clock, there were practically no calls, except as occasioned by deaths, or like emergencies.

Of course, it would be apparent to any one that there are many kinds of work where the employee would be entitled to their wages for time during forced periods of waiting, when they were not free to go about their own private affairs, being subject to call, such for example as messenger boys. Of course, their time would go on when they waited as well as when they actually worked. Drivers of buses and trucks are another example where they are required to wait on the job until their loads are completed, etc. Many other examples could be cited, where claims for overtime could be legally and justly based upon such periods of waiting. The Administrator of the Wage and Hour Division has extensively dealt with the subject, based upon the soundest of reasoning, in Interpretative Bulletin No. 13, issued July 1939, and reissued in January 1940. He dealt with situations exactly as we have here, and his construction of the law is that such call time, as plaintiff here claims and relies upon, does not meet the requirements of the Act. The Bulletin is quite lengthy, but it is not necessary to quote other than paragraphs 6 and 7. Paragraph 6 describes exactly the fact situation we have here, as follows:

"6. *In a few occupations periods of inactivity need not be considered as hours worked even though the employee is subject to call. The answer will generally depend upon the degree to which the employee is free to engage in personal activities during periods of idleness when he is subject to call and the number of consecutive hours that the employee is subject to call without being required to perform active work*—i.e., the frequency with which the employee is called upon to engage in work. In those cases, the nature of the employee's work involves long periods of inactivity which the employee may use for *uninterrupted sleep, to conduct personal business affairs, to carry on a normal routine of living, etc.* A good example of this is the employee of a small telephone exchange operating a switchboard located in the employee's house. During the night no one is in direct attendance at the switchboard and an alarm bell awakens the operator if a subscriber wishes to make a telephone call. The operator has her bed alongside the switchboard and is able to get several hours of uninterrupted sleep every night, as experience over a considerable period of time may often demonstrate. *Thus, if over a period of several months a telephone operator has been called upon to answer only a few calls between the hours of 12 and 5 in the morning a segregation of such hours from hours worked will probably be justified.*

"7. In some cases employees are engaged in active work for part of the day but because of the nature of the job are also required to be on call for 24 hours a day.

Thus, for example, a pumper of a stripper well often resides on the premises of his employer. The pumper engages in oiling the pump each day and doing any other necessary work around the well. In the event that the pump stops (at any time during the day or night) the pumper must start it up again. Similarly, caretakers, custodians, or watchmen of lumber camps during the off season when the camp is closed, live on the premises of the employer, have a regular routine of duty but are subject to call at any time in the event of an emergency. *The fact that the employce makes his home at his employer's place of business in these cases does not mean that the employee is necessarily working 24 hours a day.* In the ordinary course of events the employee has a normal night's sleep, has ample time in which to eat his meals, and has a certain amount of time for relaxation and entirely private pursuits. In some cases the employee may be free to come and go during certain periods. Thus, here again the facts may justify the conclusion that the employee is not working at all times during which he is subject to call in the event of an emergency, and a reasonable computation of working hours in this situation will be accepted by the Division." (Italics mine)

The facts of no case could more clearly bring an employee under these interpretations, than do the undisputed facts of this case. Here the plaintiff lived in a comfortable cottage, which cost the defendant $10 per month. It was entirely adequate for all of her domestic needs, and for the lady who lived with her, free of charge, as a companion, and assistant. Plaintiff's domestic life, including her sleep, was not interferred with on the average more than to the very slightest degree. I repeat, the evidence is without serious dispute that her actual work time on the switchboard did not add up to more than 1 hour out of each 24. Mrs. Tatum, who lived with plaintiff, and was introduced by her, was a very fair and credible witness. I am sorry that cannot be said of plaintiff. Her evasions to conceal how much time she actually worked with the business were not very inspiring. Too, she introduced no evidence to show how much she did work. Under the express provisions of the contract she was at liberty to stay or go when she pleased. It was entirely a voluntary matter with her if she worked at all on the exchange. The rules prescribed for all similar stations, were to be observed, but as to who did the work was left to plaintiff. The evidence does show she was faithful on her work. On the other hand, it shows in the matter of caring for her health, etc., and other outside duties whatever they were, that she attended to them with but slight interruption by the work of the exchange. She received medical treatment outside of her county and at a considerable distance from her home. She was able to get each day more than the normal hours of sleep ordinarily required for health, comfort, etc.

Some of the other defenses may be good, but as heretofore stated, I think it is not necessary to discuss but the one. For the reason stated, the judgment will be for the defendant. An order may be drawn accordingly for my signature.